UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIA MARIE BALSAMO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ERIN M. SCHICHT and BODHI ) <br> COUNSELING, LLC, ) <br> ) <br> Defendant. ) <br> ) <br> ──────────────────────── ) <br> ) <br> ERIN M. SCHICHT, ) <br> ) <br> Counter-Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TIA MARIE BALSAMO, ) <br> ) <br> Counter-Defendant. ) | 21 C 6672 <br><br> Judge Charles P. Kocoras |

## ORDER

Plaintiff/Counter-Defendant Tia Marie Balsamo's Motion to Dismiss Defendant/Counter-Plaintiff Erin M. Schicht's Counterclaim under Federal Rule of Civil Procedure 12(b)(6) is granted in part. See Statement for details.

## STATEMENT

The following facts are taken from the Counterclaim and are assumed true for purposes of this motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir.

2013). All reasonable inferences are drawn in Schicht's favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

Schicht is an Illinois Licensed Clinical Professional Counselor who provides psychotherapy services to patients in Illinois. Schicht's former patient, Heather Williams Balsamo ("Williams"), is Balsamo's wife. Schicht provided three counseling sessions to Williams on December 17, 2020, December 22, 2020, and December 29, 2020. On or about December 30, 2020, Schicht terminated the psychotherapist-patient relationship with Williams and referred her to other licensed therapists. No sexual relationship existed between Schicht and Williams at any time before or during December 2020, including the time period within which Williams was Schicht's patient. Schicht never provided psychotherapy to Balsamo, nor has she ever met or communicated with Balsamo.

On or about March 2021, Balsamo initiated a complaint with the Illinois Department of Financial & Professional Regulation ("IDFPR") alleging Schicht had sexual relations with Williams while she was Schicht's patient. From March 2021 through April 2021, Balsamo allegedly forced Williams to falsify allegations of sexual and professional misconduct against Schicht. On or about April 21, 2021, Williams, fearing for her safety and wellbeing, fled from Balsamo and withdrew the IDFPR complaint, stating she was forced to provide false allegations against Schicht under duress by Balsamo.

Williams filed for divorce on May 3, 2021, citing irreconcilable differences as the grounds for causing the irretrievable and irreversible breakdown of the marriage. On numerous occasions between April 2021 and May 2021, Balsamo told Williams that she intended to cause Schicht emotional distress and that she would institute whatever action necessary, legal or otherwise, to drain Schicht of financial resources and ruin her professional career.

Between March 2021 and December 2021, Balsamo stated to Williams and others that she hired a private investigator to follow both Williams and Schicht, thereby collecting pictures and/or videos of Schicht's private life. Balsamo also told Williams on numerous occasions between March 2021 and May 2022 that the hiring of the private investigator was for the purpose of causing Schicht severe emotional distress.

Based on the above, Schicht filed a three-count Counterclaim against Balsamo, alleging intentional infliction of emotional distress ("IIED"), defamation *per se*, and intrusion upon seclusion. Balsamo moves to dismiss the Counterclaim under Rule 12(b)(6) for failure to state a claim.

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well-pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Balsamo moves to dismiss the Counterclaim in its entirety. We address each count in turn.

I. **Count I: Intentional Infliction of Emotional Distress**

Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if she establishes that (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe

4

emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 269 (2003).

In defining the first element, the Illinois Supreme Court has held that "to qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Id.* at 274. "To avoid imposing liability for the rough and tumble of unpleasant—but not law-breaking—behavior, the case law instructs that mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not amount to extreme and outrageous conduct, nor does conduct characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Richards v. U.S. Steel*, 869 F.3d 557, 566–67 (7th Cir. 2017) (cleaned up). "And to avoid imposing liability for idiosyncratic and individualized reactions, '[w]hether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case.'" *Id.* (quoting *Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003)).

From the Counterclaim, it appears the IIED claim is based on (1) Balsamo forcing Williams to file the IDFPR complaint containing false allegations of sexual and professional misconduct; (2) Balsamo's statements to Williams that she intended to cause Schicht emotional distress and that she would institute whatever action necessary to drain Schicht of financial resources and ruin Schicht's professional career; and (3) the hiring of a private investigator to follow Schicht.

The statements, while troubling, are not conduct. And the statements were made to Williams, not Schicht. Schicht and Balsamo have never met or communicated. The statements made in the IDFPR complaint are privileged (as explained below), and the complaint was ultimately withdrawn. There are no allegations that indicate Schicht was aware of the IDFPR complaint, Balsamo's statements to Williams, or the fact that Balsamo hired a private investigator. Furthermore, the Court cannot conclude that the hiring of a private investigator during a period of marital discord is conduct that is "so extreme as to go beyond all possible bounds of decency" such that it is regarded as "intolerable in a civilized society." *Feltmeier*, 207 Ill. 2d at 274. Of course, such an action should be considered in context with Schicht's other allegations pertaining to Balsamo's conduct. Even so, the Court finds that Schicht's IIED claim against Balsamo fails because the conduct alleged does not clear the high bar of "extreme and outrageous conduct." Count I is dismissed, without prejudice and with leave to amend.

## II.    Count II: Defamation *per se*

To state a claim for defamation *per se* under Illinois law, a plaintiff must allege "facts showing that [the] defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). "A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with him." *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 579

6

(2006). A statement is defamatory *per se* "if its harm is obvious and apparent on its face" such that damages are assumed. *Id.*

In Illinois, there are five categories of statements that are considered defamatory *per se:* (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication. *Van Horne v. Muller,* 185 Ill. 2d 299, 307 (1998) (citing *Bryson v. News Am. Publ'ns, Inc.*, 174 Ill. 2d 77, 88–89 (1996)). Allegations of defamation fall within the Rule 8 pleading standards, which do not require plaintiffs to "recite verbatim the allegedly defamatory statement." *Rivera v. Allstate Ins. Co.*, 140 F. Supp. 3d 722, 728 (N.D. Ill. 2015) (collecting cases).

Balsamo argues Schicht's defamation *per se* claim fails because the alleged defamatory statements are privileged for two reasons. First, Balsamo says any statements made in connection with the filing of the complaint with the IDFPR are absolutely privileged given that the IDFPR is a *quasi-judicial* body. Second, Balsamo argues the alleged statements are protected by spousal privilege.

Schicht concedes that the IDFPR is a *quasi-judicial* body and that statements made to it are absolutely privileged. Schicht, however, claims absolute privilege does not apply under these circumstances, where Williams only filed the IDFPR complaint

7

at Balsamo's behest, and knew the allegations contained therein were false. But when absolute privilege attaches, "no cause of action for defamation lies against the person making the statement even if it is made with malice." *Mauvais-Jarvis v. Wong*, 2013 IL App (1st) 120070, ¶ 70 (citing S*tarnes v. Int'l Harvester Co.*, 141 Ill. App. 3d 652, 653 (1986)). Accordingly, any defamation *per se* claim based on statements made to the IDFPR is dismissed with prejudice.

We need not analyze Balsamo's attempt to invoke spousal privilege to thwart any remaining defamation *per se* claim, because the Counterclaim alleges that "Balsamo published defamatory statements, *per se*, on a myriad of occasions including to Schicht's professional licensing authority, Heather Williams Balsamo, *and others*." ECF No. 46, ¶ 37 (emphasis added). While the Court finds that the Counterclaim adequately apprises Balsamo of the general substance of the allegedly defamatory statements, it does not put Balsamo on notice as to who "others" are or when such statements were purportedly made. In this regard, Balsamo moves for a more definite statement under Rule 12(e). To simplify matters, however, and in light of the fact that Schicht has been granted leave to amend Count I, the Court denies Balsamo's motion for a more definite statement and instead dismisses Count II without prejudice. Schicht may amend her claim so her allegations are contained in only one document rather than two: the amended counterclaim and the more definite statement. *See Hamilton v. Oswego Cmty. Unit Sch. Dis. 308*, 2021 WL 767619, at *6 (N.D. Ill. 2021)

("Sharpening the complaint and bringing the claims into tighter focus will help everyone.").

### III. Count III: Intrusion Upon Seclusion

The elements of an intrusion upon seclusion claim are: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 71 (2004). The element of private facts is a predicate for the other three elements of the tort. *Id.* at 72. "Without private facts, the other three elements of the tort need not be reached. Because the analysis begins with the predicate, private facts, it also ends there if no private facts are involved." *Id.*

In other words, "it is not sufficient if the behavior complained of only intrudes into *personal*, rather than *private*, matters." *Vega v. Chi. Park Dist.,* 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013) (emphasis added). In this context, private matters have been described as being those "which are facially embarrassing and highly offensive if disclosed." *Cooney v. Chi. Pub. Schs.*, 407 Ill. App. 3d 358, 367 (2010). "Examples of private facts include family problems, romantic interests, sex lives, health problems, future work plans and criticism of an employer. Other examples of prying into private matters are opening a person's mail, searching a person's safe or wallet, and reviewing a person's banking information." *Vega*, 958 F. Supp. 2d at 959 (cleaned up).

9

Schicht alleges Balsamo stated to Williams "and others" that she hired a private investigator to follow both Williams and Schicht, "thereby collecting pictures and or videos of Schicht's private life." Dkt. # 46, ¶ 24. Whether the pictures and/or videos allegedly collected by the private investigator are actually private is a matter of fact which cannot be determined at this stage. *See Steinbach v. Forest Park*, 2009 WL 2605283, at *4 (N.D. Ill. 2009). Again, the bar to survive a motion to dismiss is not high. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). Schicht's intrusion upon seclusion claim may proceed for now, and further details can be developed in discovery.

### IV. Fifth Amendment Privilege

One final note. Balsamo expends much effort arguing that Schicht is attempting to use the Fifth Amendment privilege as a sword and a shield, thus providing an independent basis for dismissal of the Counterclaim with prejudice. While the Court agrees with the general principle that a plaintiff may not use the Fifth Amendment privilege as both a sword and a shield in prosecuting a civil case, we do not believe Schicht is improperly doing so here. Schicht explicitly denied the allegation that she had sexual relations with Williams while Williams was still her patient as well as in the few months following the termination of the psychotherapist-patient relationship. Her invocation of the Fifth Amendment privilege relates only to allegations of adultery allegedly occurring from March 1, 2021 through the present.

As Schicht is no doubt aware, because this is a civil case, the Fifth Amendment does not shield her from adverse inferences that may be drawn against her based on her refusal to answer certain interrogatories or depositions questions asked of her. *See Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976). Schicht's invocation of her Fifth Amendment privilege is a discovery or evidentiary issue more appropriately addressed at the summary judgment stage or at trial; it does not provide a basis for dismissing the Counterclaim.

## CONCLUSION

For the foregoing reasons, Plaintiff/Counter-Defendant's Motion Dismiss [64] is granted in part as set forth above. Defendant/Counter-Plaintiff is granted leave to file an amended counterclaim within fourteen (14) days. Status hearing set for 10/6/2022 at 10:20 a.m.

It is so ordered.

Dated: September 15, 2022

_____
Charles P. Kocoras
United States District Judge